UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

    v.                            Criminal No. 15-cr-161-LM
                                   Opinion No. 2018 DNH 112

John J. Stone


**O R D E R**

On May 15, 2018, the court held a competency hearing with respect to defendant John J. Stone. At the end of the hearing, the court concluded that Stone is incompetent and not restorable. This order explains the court's decision.

**BACKGROUND**

In September 2015, Stone was indicted on charges related to allegations that he fraudulently obtained Supplemental Security Income benefits. The charges consist of two counts of concealing events affecting the right to payment of social security benefits; one count of making a false statement; and three counts of wire fraud. In December 2016, defense counsel moved for a competency hearing pursuant to 18 U.S.C. § 4241, which the government did not oppose. The court granted the motion.

The court's task at the initial phase was to determine whether Stone was presently suffering from a "mental disease or

defect rendering him mentally incompetent to the extent that he is unable understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d); see also United States v. Wiggin, 429 F.3d 31, 36-37 (1st Cir. 2005). The court ultimately held two hearings, on January 24 and March 6, 2017. At the January hearing, the court heard testimony from government-retained expert Dr. Albert M. Drukteinis, a forensic psychiatrist. He opined that, primarily due to a neurocognitive disorder, Stone was unable to properly assist in his defense or rationally participate in the proceedings. Dr. Drukteinis also opined that Stone's competency was not restorable.

At the March hearing, the court concluded on the record that Stone was incompetent, based on Dr. Drukteinis's thorough and credible opinion. Importantly, the government did not dispute Dr. Drukteinis's conclusions.

Having come to that determination, the court was compelled by statute to commit Stone to the custody of the Attorney General for hospitalization and treatment. 18 U.S.C. § 4241(d). This is so despite the undisputed determination that Stone's competence was not restorable. See, e.g., United States v. Magassouba, 544 F.3d 387, 404-05 (2d Cir. 2008). The justification for such mandatory hospitalization is that it

2

enables "medical professionals to accurately determine whether a criminal defendant is restorable to mental competency," United States v. Strong, 489 F.3d 1055, 1062 (9th Cir. 2007), and gives the Attorney General an opportunity to explore possible medical options. United States v. Ferro, 321 F.3d 756, 762 (8th Cir. 2003); United States v. Filippi, 211 F.3d 649, 651 (1st Cir. 2000).

To that end, the statute required that Stone be hospitalized "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1). Given Dr. Drukteinis's uncontroverted opinion that Stone was not restorable, the court recommended that "the evaluation of the defendant be conducted as expeditiously as possible." Doc. no. 37 at 4. This was in keeping with the case law, which emphasizes that, while "the statute is categorical in determining who shall be incarcerated, . . . it is much more flexible and case-oriented in determining the length of incarceration." Filippi, 211 F.3d at 652.

Nevertheless, Stone was held for about four months, in what was described as a "semi-locked" mental health unit at the Federal Medical Center in Devens, Massachusetts. As was later

revealed during the testimony of Dr. Shawn Channell, a forensic psychologist at FMC-Devens, Stone's treatment over those four months amounted to (1) an increase in his antidepressant medication, and (2) exposure to the criminal-justice process through meetings with mental-health professionals and a "competency restoration group." In the competency restoration group, which consisted of nine classes over the course of two months, Stone learned about various aspects of the criminal-justice system.

In late September 2017, Stone was released, and the Warden of FMC-Devens filed a certificate attesting that his staff had found Stone to be competent. See 18 U.S.C. § 4241(e) (stating that the director of the hospitalizing facility shall file a certificate once it is determined that the defendant has sufficiently recovered to be deemed competent).

The present issue, and the subject of the May 15 hearing, is to determine whether Stone has been restored or is otherwise restorable. Specifically, § 4241(d) states as follows: "If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the

4

provisions of sections 4246 and 4248."¹  Id. § 4241(d).  At the hearing, the government presented the testimony of Dr. Channell and Dr. Drukteinis.

Dr. Channell opined that Stone was restored to competence over the course of his hospitalization.  Dr. Channell believed that Stone's deficits were grounded more in his anxiety and depression than a neurocognitive disorder.  For that reason, Dr. Channell claimed that by increasing the dosage of his antidepressant medication and exposing him to the criminal-justice process, Stone's deficits—his perseveration, inability to focus, etc.—diminished to a degree that allowed him to meaningfully participate in his defense.  Dr. Channell noted an important caveat to his opinion, however: even with diminished symptoms, Stone would need significant accommodations in the trial or plea process to assist in his own defense.  At trial, accommodations would include slowing the pace of proceedings and providing frequent breaks, while for a plea Stone would need questions repeated and would need information simplified.  Dr. Channell further opined that if the court were to find that

---

¹ Similarly, after a facility director files a certificate of competence, the court must determine whether "the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense."  18 U.S.C. § 4241(e).

Stone is not competent, Stone would not benefit from further treatment.

Dr. Drukteinis reiterated his prior opinion that Stone is incompetent. He found Dr. Channell's view unpersuasive for a few reasons. Citing numerous facts from Stone's medical history, Dr. Drukteinis contended that Dr. Channell failed to properly emphasize the role that Stone's neurocognitive disorder played in his inability to assist in his own defense. Dr. Drukteinis was also skeptical of the efficacy of Stone's putative treatment. Dr. Drukteinis noted that the "increase" in antidepressant medication was actually a return to the dosage that Stone had been taking prior to hospitalization, and that Stone's mere knowledge of his charges and the criminal-justice process would not alleviate the deficits that prevented him from assisting in his own defense.

Relying on Dr. Channell's opinion, the government took the position that Stone had been restored to competence. Defense counsel maintained that Stone was incompetent and not restorable. At the end of the hearing, the court issued its findings orally from the bench that Stone is incompetent and not restorable—and indicated that a written decision would follow.

## DISCUSSION

The court considers an extended analysis unnecessary. Indeed, the ostensible dispute between the experts is more illusory than real. Dr. Drukteinis opined that Stone could not assist in his own defense, is incompetent, and is not restorable. Dr. Channell all but explicitly acknowledged that Stone could not assist in his own defense under normal conditions, and he conceded that Stone would not benefit from further treatment.

The court continues to find Dr. Drukteinis's opinion persuasive. His view is consistent with Stone's medical history and the available sources. By contrast, the court does not find Dr. Channell's opinion persuasive. Dr. Channell gives little weight to the connection between Stone's neurocognitive disorder and his competence, despite, as Dr. Drukteinis explained, the persuasive evidence showing such a connection. Furthermore, the evidence demonstrates that Stone continues to have the same difficulties with perseveration and focus, even after treatment. Indeed, the court questions whether the educational classes can even constitute "treatment" for Stone's perseveration and inability to focus. According to Dr. Drukteinis, whose unopposed assessment this court adopted in its March 6 order, Stone's incompetence is based on his inability to assist in his

7

own defense, not on his lack of understanding of the nature or consequences of the proceedings. The educational classes are aimed more at the latter sort of deficit, which is irrelevant here. Thus, Dr. Channell's reliance on the classes as an effective treatment renders his opinion particularly unconvincing.

For these reasons, the court has no trouble concluding that Stone's condition "has not so improved," and is unlikely to improve in the foreseeable future, "as to permit the proceedings to go forward." 18 U.S.C. § 4241(d).

All that being said, this discussion obscures a more salient issue lurking in the background, and that is the deep inequity of the process to which Stone has been subjected. Prior to Stone's hospitalization, all of the parties agreed that Stone is both incompetent and not restorable. The statute nonetheless required that Stone be hospitalized for an assessment as to whether he is restorable. In light of the parties' agreement and the unique circumstances, the court recommended that the assessment be conducted "as expeditiously as possible." Doc. no. 37 at 4.

Yet, instead of undertaking that narrow inquiry on an expedited basis, Dr. Channell decided to fully re-evaluate Stone's competency. At the hearing, Dr. Channell stated that he

8

followed the Bureau of Prisons' standard procedure in evaluating and treating Stone, but this was clearly no ordinary case. Four months of needless re-evaluation and negligible treatment followed, after which Dr. Channell concluded that, if the court were to find Stone incompetent, Stone would not benefit from further treatment. Stone was confined—in a prison hospital—for far longer than was necessary to reach that limited determination. At this point, the least that can be done is to discontinue criminal proceedings and allow Stone to get on with his life.

In sum, based on the record and testimony, the court concludes that Stone cannot assist in his own defense, is incompetent, and is not restorable. See 18 U.S.C. § 4241(d), (e). Because Stone has already been released, there is no remedy that the court needs to order at the present time. See id. § 4241(d); United States v. Ecker, 78 F.3d 726, 731 (1st Cir. 1996). In addition, because the government indicated at the hearing that it would not seek commitment under § 4246 or § 4248 if the court were to find Stone incompetent and not restorable, Stone need not be held for further evaluation under those provisions.

The court presumes that the government will act swiftly to dismiss the charges against Stone. See United States v. Peppi, No. 06-157, 2007 WL 674746, at *6 (D.N.J. Feb. 28, 2007) ("[T]he Government customarily dismisses indictments against defendants who . . . will never regain competency."); see also Ecker, 78 F.3d at 729-30.

**CONCLUSION**

For the reasons stated herein, the court concludes that Stone is incompetent and not restorable for purposes of 18 U.S.C. § 4241(d).

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 29, 2018

cc: Bjorn Lange, Esq.
    Matthew Hunter, Esq.
    U.S. Probation
    U.S. Marshal